UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

<u>Mary Seguin</u>

    v.                        Civil No. 12-cv-708-JD

<u>Lincoln D. Chafee et al.</u>

O R D E R

Mary Seguin brought suit against Rhode Island Governor
Lincoln Chafee, Judge Paul Suttell, Chief Judge of the Rhode
Island Supreme Court, and two Rhode Island state officials,
alleging claims under 42 U.S.C. § 1983, federal criminal
statutes, and state law, arising out of a series of orders issued
in cases relating to custody proceedings involving Seguin.  The
defendants moved to dismiss Seguin's amended complaint and to
strike the subsequent amended complaints.  Seguin objected to the
defendants' motions.

Background

This case arises out of child custody proceedings in the
Rhode Island Family Court ("Family Court") involving Seguin and
her children, including proceedings instituted by Gero Meyersiek,
the father of one of Seguin's daughters, naming Seguin as the
respondent.  See <u>Meyersiek v. Seguin</u>, No. K01-0521M (R.I. Fam.
Ct., Kent Cnty.).  Divorce and child custody proceedings between
Seguin and her ex-husband, Marc Seguin, are also pending in the
Family Court.  See <u>Seguin v. Seguin</u>, No. K01-10503 (R.I. Fam.

Ct., Kent Cnty.).  Both of these proceedings are at issue in this case.

Judge Michael Forte of the Family Court granted Meyersiek sole temporary custody of his daughter in an order granting a motion for emergency relief dated January 11, 2010.  Thereafter, the Family Court issued a series of orders, in both the <u>Meyersiek</u> and <u>Seguin</u> proceedings, concerning custody, support, and visitation issues.  Seguin asserts that the Family Court's orders were generally issued in her absence, without notice, without findings, and without a stenographic record prepared, and were intended to retaliate against Seguin for filing reports with federal authorities regarding misconduct in her Family Court proceedings.  Seguin has been, at times, represented by counsel in the Family Court proceedings, and counsel has filed objections to certain of the Family Court's orders on Seguin's behalf.

On June 22, 2010, in the child custody proceedings that followed the Seguins' divorce, Judge Stephen Capineri issued an order, which limited Seguin's visitation rights and rights to communicate with her daughter, while granting Marc Seguin temporary sole custody and physical possession of their daughter. Seguin, through counsel, filed a petition for a writ of certiorari in the Rhode Island Supreme Court ("Supreme Court") challenging the June 22, 2010, order.  In the certiorari petition, Seguin asserted that the Family Court in the <u>Meyersiek</u> proceedings issued a similar order on January 11, 2010, in

response to an emergency motion that Seguin's counsel characterized as an abuse of process.  The Supreme Court denied Seguin's petition for a writ of certiorari.

After reading news reports about unrelated litigation filed in Rhode Island regarding truancy cases allegedly mishandled by the Family Court, Seguin filed a report with the United States Justice Department regarding those truancy cases in December 2010, and also provided federal authorities with information regarding her child custody proceedings.  Then, on December 14, 2010, Judge Capineri recused himself from the child custody proceedings involving Marc Seguin and from the Meyersiek proceedings.

After Judge Capineri recused himself, Chief Family Court Judge Haiganush Bedrosian presided over the Meyersiek proceedings.  Judge Bedrosian issued a series of restraining orders against Seguin, from January 7, 2011, through March 29, 2011, in a related Family Court proceeding in Providence County. See Meyersiek v. Seguin, No. P11-0026A (R.I. Fam. Ct., Providence Cnty.).  On March 29, 2011, all of the Meyersiek proceedings were reassigned from Judge Bedrosian to Judge John McCann.  Seguin alleges that Judge Bedrosian recused herself at that time because of the pending Justice Department investigation and that Judge Bedrosian instructed Judge McCann to continue to issue retaliatory orders against Seguin.  The Meyersiek proceeding

remains pending in the Kent County Family Court before Judge McCann.

Seguin filed a complaint in the Rhode Island Superior Court ("Superior Court") against the judges involved in the custody proceedings alleging, among other things, that the various orders interfered with Seguin's parental rights and right to travel, that the judges who issued the orders were biased, that the orders were retaliation for the misconduct reports she filed with the United States Justice Department, that the Family Court proceedings violated state laws requiring that all proceedings be transcribed or recorded, and that she was deprived of due process of law.  See Seguin v. Bedrosian, No. 2012-0124 (R.I. Super. Ct., Providence Cnty.).  In August 2012, following a hearing, the Superior Court dismissed the complaint, finding that: 1) the Superior Court lacked authority to review Family Court orders, 2) Seguin's claims asserting violations of federal criminal laws were not based on viable private causes of action, and 3) the Family Court judges were absolutely immune from suit.  See id. (Aug. 4, 2012).  Judgment was entered on October 4, 2012, and Seguin does not appear to have appealed the dismissal of her Superior Court action to the Supreme Court.  Instead, shortly after obtaining the adverse Superior Court decision, but before judgment was entered, Seguin filed a complaint in federal court in the District of Rhode Island.

4

Seguin's complaint in the District of Rhode Island action asserted essentially the same claims as were asserted in the Superior Court action.  Her claims were based on alleged constitutional violations, federal criminal statutes, and Rhode Island state law.  Seguin sought injunctive and declaratory relief as to the judicial defendants and other Rhode Island state official defendants, and monetary damages from one defendant. This court, which presided over that action, dismissed Seguin's complaint on December 12, 2012.

While that case was pending, Seguin filed the complaint in this action.  The complaint here is similar to the other District of Rhode Island complaint, except that it was brought against different defendants.  Rather than the Family Court judges, this action was brought against Rhode Island Governor Lincoln Chafee; Steven Constantino, the Secretary of the Rhode Island Executive Office of Health and Human Services; Sharon Santilli, the Director of the Rhode Island Child Support Office; and Judge Paul Suttell, the Chief Judge of the Supreme Court.

In addition to the different defendants, Seguin's complaint in this action added allegations concerning a child support order issued by Judge McCann on August 14, 2012,[1] which imposed a child support payment on Seguin and found her to have an earning

---

[1] Seguin alleges that the order was issued on August 15, 2012.  The defendants attached a copy of the order to their motion to dismiss and it is dated August 14, 2012.

capacity of at least $150,000 a year.  Seguin alleges that this order was fraudulent and was issued as the result of a conspiracy between the defendants and various Family Court judges, including Judge McCann, to retaliate against Seguin and to ensure continued funding to the State of Rhode Island pursuant to Title 4 of the Social Security Act.  Seguin's requested relief in this action focuses largely on prohibiting enforcement of the August 14, 2012, order, though, as discussed, she also seeks to enjoin the Family Court proceedings generally and seeks monetary damages against all of the defendants.

## Discussion

Seguin filed a complaint (document no. 1) and then an amended complaint (document no. 12) within twenty-one days after serving the original complaint.  The defendants moved to dismiss the amended complaint.[2]  Seguin objects to the motion to dismiss.[3]

---

[2]The defendants also moved to dismiss the original complaint.  Although they did not withdraw that motion to dismiss, because the original complaint is no longer operative, the defendants' motion to dismiss the original complaint is moot. In their motion to dismiss the amended complaint, the defendants assert that Seguin "has not served any Defendant except for Chief Judge Suttell with a copy of the Amended Complaint." Nevertheless, the defendants do not move to dismiss based on insufficient service of process.

[3]Seguin filed an opposition to the defendants' motion to dismiss her original complaint and, in the same filing, an opposition to the defendants' motion to dismiss her amended complaint.  Seguin subsequently requested an extension of time to

Seguin also filed two additional complaints: a second amended complaint ("SAC") (document no. 18) and a third amended complaint ("TAC") (document no. 39). She did not seek or obtain the court's leave to file either of the additional complaints. The defendants moved to strike the SAC but have not yet moved to strike the TAC. In their motions[4] to strike the SAC, the defendants argue that Seguin failed to obtain the defendants' consent or leave of the court before filing the SAC as required by Federal Rule of Civil Procedure 15(a).

A.   <u>Operative Complaint</u>

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). All other amendments require either the opposing party's written consent or leave of court. <u>See</u> Fed. R. Civ. P. 15(a)(2).

---

oppose the defendants' motion to dismiss her amended complaint. Because her opposition states that Seguin is opposing both motions to dismiss, the court will consider the arguments in that opposition applicable to the defendants' motion to dismiss her amended complaint.

[4]Judge Suttell filed a separate motion to strike the SAC on the same grounds as the other defendants' motion.

"Leave to amend is 'freely given when justice so requires,' but courts have discretion to deny such motions under appropriate circumstances, including undue delay and futility." Edlow v. RBW, LLC, 688 F.3d 26, 39 (1st Cir. 2005) (quoting Fed. R. Civ. P. 15(a)).  "[D]enial of [a] plaintiff['s] motion [to amend] as futile would be appropriate if the amended complaint still failed to state a claim sufficient to survive a motion to dismiss." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006).

The amended complaint filed on October 31, 2012 (document no. 12), is allowed under Rule 15(a)(1).  Seguin did not obtain the court's leave to amend her amended complaint before filing either the SAC or the TAC.  Therefore, the defendants' motions to strike the SAC are granted and the court sua sponte strikes the TAC.  See Water Keeper Alliance v. United States Dep't of Defense, 199 F.R.D. 445, 445 (D.P.R. 2001) ("'the district court has the power, on motion or sua sponte, to dismiss the complaint or to strike such parts as are redundant or immaterial'") (quoting Simmons v. Abruzzo, 49 F.3d 83-86-87 (2d Cir. 1995)); see also Fed. R. Civ. P. 15(a)(2).

Even if Seguin had moved for leave to file the SAC or the TAC, the court would still deny the motion as futile.  The SAC adds two additional defendants: Priscilla Glucksman, in-house counsel of the Child Support Office of Rhode Island, and Peter

Kilmartin, Attorney General of Rhode Island.[5]  It also adds five additional counts, all of which arise out of allegations related to her child custody/divorce proceedings in the Family Court. The TAC includes the same defendants and counts as the SAC, but adds allegations of misconduct since the filing of the action and elaborates on allegations in the SAC.  As discussed below, neither the allegations nor the additional defendants in the SAC or TAC changes the applicability of Younger abstention or Seguin's failure to state a claim upon which relief can be granted.  Therefore, even if the SAC or the TAC were the operative complaint, either would be dismissed.

B.    Motion to Dismiss

Seguin's amended complaint asserts the following claims: (1) "Supremacy Clause of the U.S. Constitution" (Count I); (2) "Due Process Clause of the 14th Amendment to the U.S. Constitution" (Count II); (3) "Immunities and Privileges Claim" (Count III); (4) "Immunities and Privileges Clause of the U.S. Constitution Article IV, Sec. 2, Clause 1" (Count IV); (5) "Fraud Upon the Court" (Count V); (6) "42 U.S.C. Sec. 1983" (Count VI); (7) "42 U.S.C. Sec. 1981 and 1982" (Count VII); (8) "Attorney's Fees, Costs and Fees (Count VIII); (9) "42 U.S.C. Section 1985(2) and

_____

[5]Kilmartin was a defendant in the other District of Rhode Island action which, as discussed above, this court dismissed on December 12, 2012.

9

1985(3)" (Count IX); (10) "42 U.S.C. Section 1986" (Count X);
(11) "Equal Protection Clause" (Count XI); and (12) "Civil RICO,
claim for sec. 1962(c), sec. 1962(d) and 18 U.S.C. sec. 1513(e)
and sec. 1513(f)" (Count XII).  The defendants in the amended
complaint are Governor Lincoln Chafee, Steven Constantino, Sharon
Santilli, and Chief Judge Paul Suttell.  Seguin seeks various
forms of injunctive and declaratory relief, as well as monetary
damages.

The defendants argue that Seguin's amended complaint should
be dismissed on various grounds, including Younger abstention.
See Younger v. Harris, 401 U.S. 37 (1971).

1.   Younger factors

The Younger abstention doctrine specifically requires
federal courts to abstain from exercising jurisdiction when the
plaintiff in the federal case is seeking to enjoin ongoing state
proceedings.  See Younger, 401 U.S. at 43-44.  As interpreted,
Younger abstention establishes "a court-made rule of abstention
built around the principle that, with limited exceptions, federal
courts should refrain from issuing injunctions that interfere
with ongoing state-court litigation."  Maymo-Melendez v. Alvarez-
Ramirez, 364 F.3d 27, 31 (1st Cir. 2004).  Younger abstention is
therefore "appropriate when the requested relief would interfere
(1) with an ongoing state judicial proceeding; (2) that
implicates an important state interest; and (3) that provides an

10

adequate opportunity for the federal plaintiff to advance his federal [claim]."  Rossi v. Gemma, 489 F.3d 26, 34-35 (1st Cir. 2007); see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431-32 (1982).

With regard to the first factor, Seguin seeks to declare a child support order issued in the Family Court proceedings void, to enjoin the ongoing Family Court proceedings, to declare illegal and/or unconstitutional the procedures employed in those proceedings, and to enjoin the Family Court from enforcing its orders generally.[6]  The relief Seguin seeks would interfere extensively with the ongoing judicial Family Court proceedings. See Montgomery v. Montgomery, 764 F. Supp. 2d 328, 333 (D.N.H. 2011) ("[a] federal-court proceeding 'interferes' with a state-court proceeding for Younger purposes when it either 'enjoins the state proceeding or has the practical effect of doing so'") (quoting Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 70 (1st Cir. 2005)).  As for the second factor, the state has

---

[6]In an apparent attempt to avoid the applicability of Younger abstention, Seguin argues that she is not requesting an injunction against the proceedings, but rather is "only seeking enjoinment of enforcement of any and all fraudulently obtained child support judgment [sic] obtained by the state defendants." Even if Seguin's requested relief is so limited, such relief would still interfere with the Family Court proceedings for purposes of Younger abstention.  See e.g., Peterson v. Fox, 488 F. Supp. 2d 14, 20 (D.N.H. 2007) ("A ruling favorable to the plaintiff in this case would be tantamount to reversing the decision of the state court, and under Younger, such a ruling should not be entered by this Court because it would improperly interfere with state court proceedings.").

a strong interest in the issues presented in the Family Court
cases, including child custody issues and the procedures employed
in Family Court.  See Colassi v. Looper, 2008 WL 2115160, at *2-
*3 (D.N.H. May 20, 2007) (state has strong interest in child
custody issues, including orders affecting custodial parent's
ability to relocate out of state (citing Moore v. Sims, 442 U.S.
415, 422-23 (1979) and Malachowski v. City of Keene, 787 F.2d
704, 708-09 (1st Cir. 1986))); see also Mann v. Conlin, 22 F.3d
100, 106 (6th Cir. 1994); Estes v. Gaston, 2012 WL 5839490, at *4
(D. Nev. Nov. 16, 2012) ("the State has a strong interest in
ensuring that . . . the parties under its jurisdiction obey the
orders of family courts as issued").

As for the third factor, whether the state judicial
proceeding provides an adequate opportunity for Seguin to advance
her claims, Seguin has not "demonstrate[d] that 'state procedural
law barred [the] presentation of'" those claims.  Murphy v. City
of Manchester, 70 F. Supp. 2d 62, 69 (D.N.H. 1999) (quoting
Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987)).  Although
Seguin's complaint implies that she does not have the opportunity
to present her claims because the Supreme Court denied her
petition for a writ of certiorari to review an order issued in
the divorce/child custody proceeding, that denial does not render
the appellate process "inadequate" for the purposes of excepting
this case from application of the Younger abstention doctrine.
See Parent v. New York, 2012 WL 2213658, at *2 (2d Cir. June 18,

12

2012) ("simply because the state courts have not issued decisions in [the plaintiff's] favor does not render them 'inadequate' for purposes of Younger abstention"); see also Huffman v. Pursue, Ltd., 420 U.S. 592, 610 (1975). To the extent Seguin alleges that the denial of her petition was because of the Supreme Court's bias against her, and thus she cannot bring her claims in state court, the third Younger factor focuses only on whether any procedural impediments exist.[7] See Hansel v. Town Ct., 56 F.3d 391, 394 (2d Cir. 1995) ("So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for Younger purposes.").

Seguin does not argue that Rhode Island law bars her from raising her claims in the Family Court proceedings or in the Supreme Court.[8] "Absent some clear reason to think otherwise, the court must and does assume that state procedures will afford an adequate remedy." McKenna v. DeSisto, 2012 WL 4486268, at *4

---

[7]Seguin's allegations of bias in the Supreme Court are discussed further in the following section concerning exceptions to Younger abstention.

[8]Although Seguin filed a petition for a writ of certiorari to review an order issued in the divorce/child custody proceeding, Seguin chose not to appeal the Superior Court order dismissing her case in which she brought constitutional claims similar to this action, despite that avenue being available. See R.I. Gen. Laws. §§ 8-1-2 & 14-1-52. Nor has Seguin appealed the August 14, 2012, order.

(D.R.I. Sept. 27, 2012) (internal quotations marks and citation
omitted); see also Pennzoil, 481 U.S. at 15.  Therefore, the
third Younger factor pertains to this case.[8]


    2.   Younger exceptions

    When the three Younger criteria are satisfied, abstention is
required absent "exceptional circumstances," which may include a
situation where "irreparable injury is both great and immediate .
. . or where there is a showing of bad faith [or] harassment."
Mitchum v. Foster, 407 U.S. 225, 230 (1972) (internal quotation
marks and citations omitted).  Extraordinary circumstances are
also present in "cases in which extreme bias completely renders a
state adjudicator incompetent."  Esso Standard Oil Co. v. López-
Freytes, 522 F.3d 136, 143 (1st Cir. 2008).  The "exceptions to
Younger's policy of abstention have been very narrowly construed
by the Court."  Bettencourt v. Bd. of Registration in Med. of
Commonwealth of Mass., 904 F.2d 772, 779 (1st Cir. 1990)
(internal quotation marks and citation omitted).  It is the
plaintiff's burden to "make sufficient specific factual

---

    [8]Seguin appears to suggest that Younger abstention does not
apply because "[t]he defendants are not parties or participants
to any on-going state proceedings."  She suggests, citing Dennis
v. Sparks, 449 U.S. 24 (1980), that suits brought against
individuals who corrupt a judicial process are not subject to
Younger.  Seguin misreads Dennis, which held that private parties
conspiring with a judge are acting "under color of" law for
purposes of a § 1983 action.  The case has nothing to do with
Younger abstention.

allegations which support an inference that the particular exception applies and [she] cannot rely on general claims of misconduct." <u>Kennedy v. Town of Billerica</u>, 594 F Supp. 2d 117, 124-25 (D. Mass. 2009) (internal quotation marks and citation omitted).

Seguin's complaint recounts various orders which were decided in her adversaries' favor and notes the recusal of several Family Court judges in her proceedings.  To the extent Seguin argues that these actions suggest bias on the part of the judiciary (and, because of her allegations of a conspiracy, the defendants generally), "[t]he presumption of judicial impartiality cannot be trumped by free-floating invective, unanchored to specific facts." <u>Brooks v. N.H. Supreme Court</u>, 80 F.3d 633, 640 (1st Cir. 1996) ("Judicial bias is a recognized basis for derailing <u>Younger</u> abstention, but the claim requires more than the frenzied brandishing of a cardboard sword."); <u>see also</u> <u>Gibson v. Berryhill</u>, 411 U.S. 564, 577-79 (1973).  Seguin's accusations and unfounded assumptions are not enough.  Therefore, Seguin has not sufficiently alleged that the Family Court judges are biased against her.

To the extent Seguin implies that the Supreme Court, necessarily endorses the Family Court's alleged bias and, therefore, is unable to impartially review her claims against the defendant judges, that argument is similarly unavailing.  "[A]n entire group of adjudicators cannot be disqualified wholesale

15

solely on the basis of an alleged institutional bias in favor of a rule or policy promulgated by that group." Brooks, 80 F.3d at 640 (citing Doolin Sec. Savs. Bank v. FDIC, 53 F.3d 1395, 1407 (4th Cir. 1995)).

Nor has Seguin adequately alleged that the Family Court proceedings were brought in bad faith or that she would suffer irreparable harm from abstention. "'[B]ad faith' in [the Younger] context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." Kugler v. Helfant, 421 U.S. 117, 126 n.6 (1975). Here, the custody proceedings were instituted by Seguin's ex-husbands, not the Family Court or the defendant judges.

Regardless, Seguin's allegations of bad faith are predicated on conclusory allegations. Seguin alleges that the various orders issued against her in the Family Court proceedings, including the August 14, 2012, order, were (i) motivated by bias or retaliatory animus, (ii) were issued to cover up an elaborate Racketeer Influenced and Corrupt Organization ("RICO") enterprise, and (iii) were issued to perpetuate a scheme to illegally receive federal funding pursuant to the Social Security Act. These conclusory allegations are insufficient to demonstrate bad faith. See Douglas v. N.H. Supreme Court Prof. Conduct Comm., 187 F.3d 621, 1998 WL 1085773, at *1 (1st Cir. 1998) ("the element of illegal motive must be pleaded by alleging specific non-conclusory facts from which such motive may

16

reasonably be inferred, not merely by generalized asseveration alone") (internal quotation marks and citation omitted). Therefore, Seguin has not alleged that the bad faith exception applies.

Nor has Seguin made "a showing of irreparable harm that is both great and immediate." Esso, 522 F.3d at 143. Seguin has not shown that further review of her federal constitutional claims in the Family Court proceedings or in a petition to the Supreme Court, seeking to invoke that court's appellate or supervisory jurisdiction, would be insufficient to alleviate any injury to her rights, without this court's intervention.

Because Younger applies, abstention is required, and the motion for preliminary injunctive relief is denied. See Colonial Life & Acc. Ins. Co. v. Medley, 572 F.3d 22, 25 (1st Cir. 2009) ("If Younger requires abstention, 'there is no discretion to grant injunctive relief.'") (citation omitted).

3.   Additional grounds for dismissal

Seguin argues that Younger abstention does not apply because, although the suit seeks injunctive relief to prevent the enforcement of the August 14, 2012, order (as well as others), she also "demands damages from the state defendants for the harms they caused en route to the judgment, $5 million from state executive actors and $5 million from defendant Paul Suttell." Even assuming that Seguin seeks monetary damages and not

17

injunctive relief and that her claims were not subject to <u>Younger</u> abstention, her claims would still be dismissed.

Seguin's allegations against the defendants suggest a vast conspiracy involving the Rhode Island Executive Office of Health and Human Services, the Rhode Island Child Support Office, the governor of Rhode Island, the Chief Justice of the Rhode Island Supreme Court, and numerous Family Court judges, with a goal of retaliating against Seguin for various reasons and fraudulently inflating her child support obligations to illegally receive federal funding pursuant to the Social Security Act.  Such allegations to do not state "a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (the Rule 12(b)(6) standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusations.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.").  The court may grant a motion to dismiss "claims that are highly implausible or pled only in conclusory terms."[9] <u>Rule v. Fort Dodge Animal Health, Inc.</u>, 607 F.3d 250, 252 (1st Cir. 2010); <u>DM Research, Inc. v. College of Am. Pathologists</u>, 170 F.3d 53, 56 (1st Cir.

---

[9]Further demonstrating the implausibility of Seguin's claims is that the amended complaint does not mention any actions taken by Constantino or Santilli, and the allegations against Governor Chafee arise primarily out of allegations of conduct by his "agent", Glucksman.

1999) ([a] court need not accept unsupported allegations of a "conspiracy" or an "agreement . . . as a sufficient basis for a complaint").  Accordingly, even if Seguin's claims were not subject to <u>Younger</u> abstention, they would still be dismissed because the complaint does not state a claim upon which relief can be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).

## Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 20) is granted.  All other pending motions are terminated as moot.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge
(Sitting by designation.)

December 14, 2012

cc:  Mary Seguin, pro se
     Rebecca Tedford Partington, Esq.
     Susan E. Urso, Esq.

19